```
    J1U7PARC

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4           v.                                 03 Cr. 1197 (SHS)

 5  UZAIR PARACHA,

 6               Defendant.

 7  ------------------------------x
                                              New York, N.Y.
 8                                            January 30, 2019
                                              3:30 p.m.
 9

10  Before:

11                       HON. SIDNEY H. STEIN
                                              District Judge
12

13                            APPEARANCES

14  GEOFFREY S. BERMAN
         United States Attorney for the
15       Southern District of New York
    BY:  KARL METZNER
16       ELIZABETH HANFT
         Assistant United States Attorneys
17
    JOSHUA DRATEL
18       Attorney for Defendant

19

20

21

22

23

24

25
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

J1U7PARC

1              (Case called)

2              (In open court)

3              MR. METZNER:  Karl Metzner and Elizabeth Hanft for the
4     government.  Good afternoon, your Honor.

5              THE COURT:  Good afternoon.

6              MR. DRATEL:  Good afternoon, your Honor.  Joshua
7     Dratel for Mr. Paracha, who is standing by my side.

8              THE COURT:  Hi, good afternoon.

9              I received a letter from the government stating that
10    the government had withdrawn the appeal from the order granting
11    the Rule 33 motion providing for a new trial and, therefore, we
12    will go to trial, and the government requested a trial date.
13    Government, is that what you're seeking at this time?

14             MR. METZNER:  Given that there seems to be no other
15    alternative, your Honor, yes.

16             THE COURT:  All right.  Defense?

17             MR. DRATEL:  At this stage, yes, your Honor, that
18    seems to be where we're headed.  In terms of a trial date
19    though, I would like to -- I have a number of trials coming up,
20    one of which is a little bit in flux in terms of where it's
21    going to be in terms of the schedule.

22             So, I talked to Mr. Metzner, and I think we're both --
23    and also we have motions -- not to reinvent the wheel with
24    what's been done before, but some other things, and obviously
25    things that now may be available to us that weren't available

1    to the defense 15 years ago -- but to give sufficient time for
2    that as well.
3              THE COURT:  This is quite a wind-up.
4              MR. DRATEL:  But maybe like December 1, your Honor.
5              THE COURT:  I think that's way, way too far.
6              MR. DRATEL:  My problem is I have a trial in July, I
7    have a trial in September.  The September trial may go earlier,
8    in May, but right now it's going to be September.  If it's not
9    --
10             THE COURT:  I don't want to do this in December.  The
11   man has been incarcerated for an extended period of time.
12             MR. DRATEL:  I understand, your Honor.  We don't want
13   to do it in the beginning of September, because of September
14   11.  I think the Court had the same issue back when the initial
15   trial was held.  That's the other spot that's available.
16             THE COURT:  August.
17             MR. DRATEL:  I have a trial July that's going to be
18   four weeks, it starts July 8.
19             THE COURT:  Is it actually going to go?
20             MR. DRATEL:  Right now it's going.  I mean if it
21   changes --
22             THE COURT:  What about May?  April?  March?
23             MR. DRATEL:  I think that's too soon for the kind of
24   motion practice that we've got.
25             Let me suggest this, your Honor.  The trial that is

supposed to be the end of September may be at the end of May; the judge has not decided.  It was supposed to start in March, but due to some discovery issues that arose very recently it was pushed back where the judge has not made a decision.

        THE COURT:  I'm having trouble following you.

        MR. DRATEL:  Well, if it goes in May, then later on in September is available.

        THE COURT:  What about August?

        MR. DRATEL:  That's only if the July 1 gets moved.  If we want to put off setting a trial date for two to three weeks until those things get ironed out, that could be possible.

        THE COURT:  Government?

        MR. METZNER:  No objection, your Honor.

        THE COURT:  Let's set it tentatively now for August.  You will let me know if we can't do it in August from your standpoint.

        MR. DRATEL:  Yes.

        THE COURT:  And you will know in a couple of weeks.

        MR. DRATEL:  I will.  I will.

        THE COURT:  OK.  Is there any opening earlier than August?

        MR. DRATEL:  Not right now because of, you know, the possibility that I'm going to be on trial May, June and July.

        THE COURT:  When will you know about the May trial?

        MR. DRATEL:  Probably within the next couple of weeks.

J1U7PARC

1  That's the one that I'm thinking is going to -- I will know
2  probably by the middle of February.
3          THE COURT:  All right.  And then it can be put in May,
4  correct, if the May trial goes away?
5          MR. DRATEL:  If we can get everything done by then.
6  June would be better than May.  I mean if the May trial doesn't
7  go -- if the May trial doesn't go and the July trial doesn't
8  go, then June is available.  It's a two week trial, right?  I
9  think there were nine or ten trial days including summations.
10         THE COURT:  Government, do you agree with that?
11         MR. METZNER:  At the longest, your Honor.
12         THE COURT:  OK.  So from the standpoint of my schedule
13 June is a real possibility.
14         All right, Mr. Dratel, in simplified form tell me now
15 what the potential options are.  May if your May trial doesn't
16 go, correct?
17         MR. DRATEL:  Yes, but I think May is a little soon
18 given what we may want to do with motions.
19         THE COURT:  All right.  June?
20         MR. DRATEL:  June would be open, yes, if my May trial
21 is actually September, then June would be open, and the
22 beginning of June is probably better, because -- well, if both
23 trials get moved, then any time in June, but if the July trial
24 stays in July, the beginning of June would be better so that I
25 had time before the July trial.

1            THE COURT:  All right, June is a possibility.
2            MR. DRATEL:  Yes.
3            THE COURT:  Then what is a possibility?  August or
4    July?
5            MR. DRATEL:  August, I would say.
6            THE COURT:  Pardon me?
7            MR. DRATEL:  August.
8            THE COURT:  August.
9            MR. DRATEL:  If the July trial is still out there.  If
10   it doesn't go --
11           THE COURT:  Let's set this for the beginning of
12   August, but if it can be done in June, you'll let me and the
13   government know that in the next couple of weeks.
14           MR. DRATEL:  OK.
15           THE COURT:  But I want the failsafe, the fall-back of
16   August.
17           MR. DRATEL:  OK, your Honor.  Can we set a date in
18   August?
19           THE COURT:  August 5.
20           MR. DRATEL:  August 5?  OK.  That will lock us in
21   then.
22           THE COURT:  That's what I'm trying to do.  But I don't
23   want the fact that I'm setting it in August to dissuade you
24   from June, if your trial falls through.
25           MR. DRATEL:  Once that trial is decided whether it

1   starts May 28 or September 30, once that's decided, I will let
2   the Court know.
3           THE COURT:  And if that's not going to go on May 28,
4   then we will set this trial down for June 10.  All right?  So
5   did I say August 5?
6           MR. DRATEL:  Yes.
7           THE COURT:  That's what it is now, August 5.  And if
8   it can be June 10, we will then make it June 10.  Right now
9   it's August 5 at 9:30 a.m.
10          I'm going to set a very early last date for motions.
11  You're telling me that you think there will be an array of
12  motions; is that correct?
13          MR. DRATEL:  Yes, but they will mostly be of a similar
14  character, but yes.  They will most likely have to do with
15  access to witnesses and information.
16          THE COURT:  Shall we make the deadline for motions two
17  months before the commencement of trial?
18          MR. DRATEL:  Sure, your Honor.
19          THE COURT:  Government?
20          MR. METZNER:  That's fine, your Honor.
21          THE COURT:  All right.  Two months prior to trial.
22  And if you have them earlier give them to me earlier.
23          MR. DRATEL:  Yes, because if they do involve us
24  getting access, that would involve travel, obviously.
25          THE COURT:  Now you're talking about access to

1   Guantanamo?
2            MR. DRATEL:  Yes, your Honor, most likely.
3            THE COURT:  Three months prior to trial.
4            MR. DRATEL:  OK, I think that makes sense.
5            THE COURT:  Three months prior to trial.
6            Anything else?  Government?
7            MR. METZNER:  Your Honor, given that the trial date is
8   set for August 5, at the request of the defense we would ask
9   that you exclude time between now and that date, in the
10  interests of justice and for trial preparation and consultation
11  with counsel.
12           THE COURT:  Defense?
13           MR. DRATEL:  No objection, your Honor.
14           THE COURT:  The government, having moved for an
15  exclusion of time -- which I take to be pursuant to 18 United
16  States Code, 3161(h)(7)(A) -- and the defense indicating it has
17  no objection, I hereby exclude time from today until the
18  commencement of trial on August 5.
19           I do find that the ends of justice outweigh the
20  interests of the public and of the defendant in a speedy trial.
21  The purpose of the exclusion is to allow the parties to prepare
22  for trial and to attempt to resolve this if they can.
23           Now, gentlemen, we go through this conversation every
24  time.  I have no intention of involving myself in plea
25  discussions, and I have no idea what it means when the

1    government says, Mr. Metzner, "unfortunately, yes."  I don't
2    know what that means, but if the parties can resolve it, fine,
3    otherwise you have a motion date and you have a trial date.
4    All right.  Thank you all.
5             MR. DRATEL:  Your Honor, just two other things.  One
6    is -- and I'm not -- I'm just previewing in case we want to
7    come to the Court -- one is just a property issue with the
8    Bureau of Prisons.  Unfortunately we are still unable to -- the
9    Bureau of Prisons has not transferred all of Mr. Paracha's
10   property, including the Koran he had for the entirety of his
11   time previously for 15 years, and so we're trying to do that,
12   and we may ask the Court --
13            THE COURT:  15 years?  He has been incarcerated for
14   longer than that.
15            MR. DRATEL:  Yes.
16            THE COURT:  All right, you may come to the Court.
17   What?
18            MR. DRATEL:  For assistance with the BOP.
19            THE COURT:  Well, the man is entitled to a Koran.
20   Anyone is entitled to what they use for religious purposes.
21   Let's get it done.
22            MR. DRATEL:  OK.
23            THE COURT:  You can come to me for anything you want.
24            MR. DRATEL:  Thank you, your Honor.
25            And also in a unique situation which I haven't had

SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1  before, is because the Court vacated the convictions, there is
2  no appeal pending, so there is technically no stay or anything
3  in that regard.  The $500 assessment, in terms of getting that
4  vacated, obviously it would enhance Mr. Paracha's commissary
5  account over the next several months.
6          THE COURT:  What's the position of the government?
7          MR. METZNER:  I will look into it, your Honor.  I have
8  never had it.
9          THE COURT:  Nor have I.  Let's look into it.  The
10 parties should either come to an agreement or let me know what
11 they find.  Anything else?
12         MR. METZNER:  No.
13         (Adjourned)