

| | |
|---|---|
| CREATING<br>LAW<br>ENFORCEMENT<br>ACCOUNTABILITY &<br>RESPONSIBILITY | Main Street Legal Services, Inc.<br>CUNY School of Law<br>2 Court Square<br>Long Island City, NY 11101-4356<br>www.cunyclear.org |

December 30, 2019

**BY ELECTRONIC MAIL**

~~REQUEST TO BE FILED UNDER SEAL~~ *SHS 3/17/2020*

The Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: __3/18/2020__

>     Re:   *United States v. Uzair Paracha*, 03-CR-1197 (SHS)

Dear Judge Stein:

We submit this letter on behalf of Uzair Paracha, whom undersigned defense counsel represent in the above-titled case. In our second letter of December 27, 2019, sent to the Court after the government's filing on the same date, we requested permission to file a letter today setting forth Mr. Paracha's remaining proposed changes to the draft *nolle prosequi* presented by the government and his position as to why they are necessary to avert unfair and adverse consequences. Mr. Paracha hereby also respectfully requests specific relief pursuant to the Court's supervisory power.

### Background

As instructed by the Court at the December 20, 2019 hearing, undersigned counsel modified their previous requests for changes to the *nolle prosequi* and shared a revised set of proposed modifications on that same date. *See* Ex. A. The suggested changes were modest, consisting only of three deletions and one correction, with no other additions. In every instance, the adjustments left the government's chosen recitation of basic facts intact, while removing or rectifying superfluous language that could adversely and unfairly impact Mr. Paracha in Pakistan.

On December 24, 2019, counsel for the government responded and asked how the proposed changes relate specifically to Mr. Paracha's security upon his return to Pakistan. On December 26, 2019, undersigned counsel replied, explaining how each proposed change relates to Mr. Paracha's security upon return to Pakistan. *See* Ex. B.

The first undersigned counsel heard of the government's position regarding the revised changes was in its December 27, 2019 filing with this Court. The government agreed to replace a statement in the *nolle* that Mr. Paracha "has consented to mandatory and immediate removal from

(t) 718.340.4558
(f) 718.340.4533
(e) cunyclear@law.cuny.edu



the United States" with the defense's corrected language that Mr. Paracha "has consented to voluntary and immediate repatriation from the United States to Pakistan." Undersigned counsel had pointed out that removal was a term of art and that Mr. Paracha was not subject to a final order mandating his removal. Importantly, counsel also emphasized that the government's imprecise use of language risked confusing Pakistani authorities in Pakistan about Mr. Paracha's status, leading them to treat him as a "deportee" who was removed from the United States, detaining and questioning him, instead of treating him as a Pakistani national who is choosing freely to return to his country.[1]

The government rejected Mr. Paracha's three remaining proposed revisions to the *nolle*, detailed below, prompting the instant filing and respectful request for relief pursuant to the Court's supervisory power.

## The Remaining Proposed Revisions

Below is each remaining proposed modification as communicated to the government, followed by a brief explanation of how each proposed change relates to Mr. Paracha's freedom and safety upon his return to Pakistan. *See* Ex. B. The paragraph references are to the paragraphs as numbered in the government's proposed *nolle*, filed under seal with the Court on December 12, 2019.

(1)

Paragraph 5:

> **On November 23, 2005, a jury convicted UZAIR PARACHA, the defendant, on all counts in the Indictment following a trial that lasted approximately two weeks.** ~~The Government established at trial, through evidence that included PARACHA's voluntary admissions to law enforcement agents, that PARACHA knowingly took steps to facilitate the unlawful entrance into the United States of an individual who PARACHA knew was an al-Qaeda operative.~~

The struck-out language, in a *nolle* signed by the U.S. government and so ordered by this Court, would prompt Pakistani agencies to detain and interrogate Mr. Paracha about his "voluntary admissions" to U.S. law enforcement agents.[2]

---

[1] As Pakistani newspapers report, it is common practice for the Federal Investigation Agency of Pakistan to question deportees. *See, e.g, FIA arrests 24 deportees*, Dawn, June 16, 2019, https://www.epaper.dawn.com/DetailNews.php?StoryText=26_06_2019_153_005 ("After the verification process, 20 deportees were allowed to go home while 24 were taken into custody by Federal Investigation Agency's immigration staff ...."); Mohammad Asghar, *61 Pakistanis deported by United States and Greece arrive in Islamabad*, Dawn, May 16, 2019, https://www.dawn.com/news/1482549 (discussing how deportees from Greece were held by Federal Investigation Agency for further legal proceedings).

[2] The U.S. Department of State's human rights report on Pakistan notes accounts that the security forces, including the intelligence services, torture and abuse individuals in custody. U.S. DEP'T OF STATE, BUREAU OF DEMOCRACY,

As the Court's July 3, 2018 Opinion makes clear, the reliability, consistency, coherence, and probative value of those statements is far from firm in light of the evidence that led the Court to vacate Mr. Paracha's conviction in the interest of justice. The Court explained that new evidence lends support to Mr. Paracha's theory that "his pretrial statements were fictions." *United States v. Paracha*, 2018 WL 3238824, at *16 (S.D.N.Y. July 3, 2018).

The language in the proposed *nolle* takes what the Court described as Mr. Paracha's "inchoate," "contradictory," and "shifting pretrial statements," *id.* at *15, and characterizes those same statements without nuance as "voluntary admissions." That wording is inconsistent with the Court's actual view and ignores the fuller understanding of the facts we possess today, as captured in the Court's Opinion.

If the Court signs off on that language and so orders it, Pakistani authorities would read that as judicial endorsement. That would lead them to view and treat Mr. Paracha differently, detaining and interrogating him about his "voluntary admissions."

(2)

Paragraph 11:

> On November 14, 2018, UZAIR PARACHA, the defendant, filed a motion for bail pending trial. On November 20, 2018, the Court denied the motion, ~~finding that, given the "serious . . . nature and circumstances of the offense charged," there were "no conditions or combination of conditions that [would] reasonably assure the . . . safety of the community." Tr. Nov. 20, 2018 Conf., Dkt. No. 140, at 5~~.

The struck-out language from the bail hearing is very likely to be taken by Pakistani authorities as an indication that Mr. Paracha is a threat to public safety in Pakistan. That would also lead to his further detention and interrogation.

(3)

Paragraph 16:

> the Government believes that dismissing the Indictment under the circumstances presented is the best available option to ~~protect   the   public   and~~ preserve  national-security equities.

Finally, the struck-out language above implies that Mr. Paracha is a danger to the public and that the public must be protected from him. This language from the U.S. government, countersigned by the Court, would also lead to his further detention and interrogation in Pakistan

---

HUMAN RIGHTS & LABOR, *2018 Country Report on Human Rights Practices: Pakistan* (2018), § 1(c), https://www.state.gov/wp-content/uploads/2019/03/PAKISTAN-2018.pdf.

and should therefore be omitted as it is unnecessary to achieve the government's purpose in this *nolle prosequi.*

In its latest filing, the government attempts to make hay of the possibility that busy Pakistani officials theoretically could go through the effort of retrieving and reviewing the entire record of this case, zeroing in on the same language that the government has arbitrarily selected in its proposed *nolle.* In reality, however, what will matter most for Mr. Paracha's safety upon his return to Pakistan is how he and this case are described in the official, court-ordered and docketed *nolle* disposing of the case against him. This is already borne out by a Pakistani consular official's request to defense counsel for a copy of this Court's July 3, 2018 Opinion, which counsel mentioned during the December 20, 2019 hearing. Since then, that same Pakistani official has followed up with inquiries regarding this Court's proceedings and any further decisions the Court has reached in this case (undersigned counsel encouraged the official to take up these questions with counsel for the government).

The selective repetition, in a *nolle* bearing this Court's imprimatur, of findings of fact that were called into question by the Court's July 3, 2018 Opinion, along with statements that Mr. Paracha poses some sort of risk to public safety, would unnecessarily and unfairly risk compromising Mr. Paracha's freedom and safety in Pakistan as the *nolle* is the only document to which Mr. Paracha will be able to point to show conclusively that he no longer faces criminal prosecution in the United States. That these same findings of fact and statements hypothetically could be found elsewhere in the record neither mitigates nor justifies the risks flowing from their inclusion in the *nolle.* If this so-ordered judicial document presents Mr. Paracha as a danger, or otherwise affirms that he made "voluntary admissions" concerning an al-Qaida operative, it would certainly give Pakistani authorities a motive to detain and interrogate him.

In drafting its *nolle,* the government has cherry-picked from the record in a way that paints only a very partial and potentially damning picture of Mr. Paracha and his case. Mr. Paracha's modest proposed deletions, on the other hand, leave untouched the government's basic procedural history and do not seek to strip the document of "neutral facts" as the government argued in its December 27, 2019 letter.

Indeed, Mr. Paracha's proposed deletions in paragraphs 5 and 11 leave intact the neutral facts that the record reflects: Mr. Paracha was convicted at trial and, in November 2018, the Court denied bail. The government's December 27, 2019 letter does not explain why its additional language is even relevant—let alone necessary—for purposes of a *nolle prosequi.* Thus, the proposed deletions would leave the *nolle* substantively unchanged, and not deprive the remainder of any context or procedurally required language.

For example, as defense counsel noted at the December 20, 2019 hearing, the proposed *nolle* quotes extensively from the November 20, 2018 bail hearing in paragraph 11, yet states perfunctorily in paragraph 9 that the Court granted the Rule 33 motion without providing any quotes explaining the basis for the ruling, or even a summary of the reasons that impelled the Court to grant such extraordinary relief. Such a discrepancy suggests an intention to string together and emphasize information that could portray Mr. Paracha as a danger, while downplaying or ignoring information in the record that points to the legal fact of his innocence.

Moreover, it is far from clear how a paragraph detailing the denial of bail is relevant to the case's procedural history, as it does not concern the filing of an indictment, the outcome of trial, or any post-trial or post-conviction motions. Undersigned counsel has been unable to find any *nolle prosequi* filed in the Southern District of New York within the past five years that notes whether a defendant was granted bail, let alone a *nolle* like the one at issue here, that quotes from a bail hearing as to why bail was denied. This, too, suggests that the government's aim is to cast aspersions on Mr. Paracha and to signal that he is still somehow a threat, notwithstanding the Court's vacatur of his conviction, thereby unfairly creating a risk of further detention and interrogation in Pakistan.

## Request for Relief

Given the risks to Mr. Paracha's freedom and safety in Pakistan that the aforementioned language would unfairly and unnecessarily occasion, Mr. Paracha respectfully asks the Court to modify the *nolle prosequi* to conform to Mr. Paracha's proposed revisions above (in addition to the single change that the government has already agreed to make) before so ordering it.

The government has failed to point to any authority that prevents the Court from modifying the language in a *nolle prosequi* that it intends to countersign and so order. If courts have undisputed authority to determine whether a *nolle prosequi* should be entered with or without prejudice, *see, e.g., United States v. Rosenberg*, 108 F. Supp. 2d 191, 204 (S.D.N.Y. 2000) (discussing court's rejection of defendant's objection to grant of *nolle prosequi* without prejudice as opposed to with prejudice), then the relief sought here cannot be assumed to fall beyond the Court's reach. Surely, the discretion to determine whether superfluous language can be removed from a *nolle* submitted for the Court's approval is of less significance than the authority to decide if a *nolle* is entered with or without prejudice.

Similarly, Mr. Paracha's modest proposed modifications would be appropriate under the Court's supervisory power. As the Second Circuit explained in *United States v. HSBC Bank, N.A.*, 863 F.3d 125, 135 (2d Cir. 2017), the supervisory power "permits federal courts to supervise 'the administration of criminal justice' among the parties before the bar" (*quoting United States v. Payner*, 447 U.S. 727, 735 n.7 (1980), and *McNabb v. United States*, 318 U.S. 332, 340 (1943)). The Supreme Court had earlier held, more generally, that in "a federal criminal case," it "has supervisory jurisdiction over the proceedings of the federal courts" and that "[i]f it has any duty to perform in this regard, it is to see that the waters of justice are not polluted." *Mesarosh v. United States*, 352 U.S. 1, 14 (1956) (footnote omitted).

The *nolle prosequi* is a judicial document, as it is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Indeed, the *nolle* will dispose of the case and therefore inherently relates to the performance of the judicial function. Further, unlike the monitor's report at issue in *HSBC*, it will be docketed and requires the Court's signature and approval per Rule 48(a). Importantly—and also unlike in *HSBC*—here, the exercise of supervisory authority is appropriate and necessary because it would serve its more general purpose of ensuring that "the waters of justice are not polluted" by

the government's unnecessary and likely harmful (to Mr. Paracha) inclusion of superfluous, self-serving language in the *nolle* it intends to present to this Court. *Mesarosh*, 352 U.S. at 14.

Nothing in *HSBC* precludes the Court from granting the limited relief that Mr. Paracha seeks. This Court has an interest in ensuring that the government not misuse the *nolle prosequi* as an opportunity not only to take gratuitous parting shots at Mr. Paracha, but also to corral the Court into rubber-stamping the government's self-serving selections from the record, its omissions, and its loaded statements. That interest is especially clear where, as here, the Court has vacated a conviction pursuant to Rule 33 and the language at issue likely would result in further detention and interrogation for a man who has already suffered enough. The modest relief sought would be an appropriate use of the Court's supervisory authority.

In the alternative, and in fairness to Mr. Paracha, to the Court's own July 3, 2018 Opinion, and to the history of this case, Mr. Paracha respectfully requests that the Court add balancing language to the *nolle prosequi* before it countersigns the document. Hopefully, this would at least reduce the risk of adverse consequences once Mr. Paracha is repatriated. Specifically, Mr. Paracha proposes that the Court type in the following sentence above its signature line, or as an addendum bearing the Court's signature:

> The Court underscores here the conclusions stated in its July 3, 2018 Opinion that newly discovered evidence lends support to Uzair Paracha's theory that "his pretrial statements were fictions," *United States v. Paracha*, 2018 WL 3238824, at *16 (S.D.N.Y. July 3, 2018); that said evidence "would probably result in an acquittal," *id.* at *15; and "that allowing defendant's conviction to stand would be a manifest injustice." *Id.* at *1.

Judge Berman recently took this path in *United States v. Epstein*, 19-CR-490 (S.D.N.Y. Aug. 29, 2019), ECF No. 52. There, the court held a hearing after the government filed a *nolle prosequi*. Judge Berman then added the following language above his signature on the *nolle*: "The Court incorporates by reference the transcript of the hearing held on 08/27/19 in its entirety and underscores the significance of the Crime Victims' Rights Act. 18 U.S.C. § 3771." Ex. C.

Mr. Paracha remains grateful for the Court's forbearance in this matter, as are his undersigned defense counsel. Our goal is to secure our client's release and his safe return to Pakistan as soon as possible. However, we cannot lose sight of the fact that Mr. Paracha, now an innocent man, has already spent nearly seventeen years of his life behind bars. We would be remiss as his counsel if we sought to achieve his repatriation without guarding against unnecessary and unfair risks of yet more imprisonment (or worse). Our duty to act now becomes all the more pressing with the awareness that once these proceedings are concluded, this Court may well lose its authority to correct any subsequent misfortune that the current language in the *nolle* might generate for our client.

We respectfully request that this letter and any resulting order be filed under seal until Mr. Paracha's departure from the United States.

6

Respectfully submitted,

_____/s/_____

RAMZI KASSEM
NAZ AHMAD
**CLEAR project**
**Main Street Legal Services, Inc.**
CUNY School of Law
2 Court Square
Long Island City, New York 11101
(t) (718) 340-4558
(f) (718) 340-4478
(e) ramzi.kassem@law.cuny.edu

JOSHUA L. DRATEL
**Dratel & Lewis, P.C.**
29 Broadway, Suite 1412
New York, New York 10006

*Counsel for Uzair Paracha*

CC:    Andrew Dember, Esq. (by email)
       Elizabeth Hanft, Esq. (by email)
       Kyle Wirshba, Esq. (by email)
       *Assistant United States Attorneys*

# EXHIBIT A

**From:** Ramzi Kassem
**Sent:** Friday, December 20, 2019 2:55 PM
**To:** Hanft, Elizabeth (USANYS) <Elizabeth.Hanft@usdoj.gov>; Dember, Andrew (USANYS)
<Andrew.Dember@usdoj.gov>; Wirshba, Kyle (USANYS) <Kyle.Wirshba@usdoj.gov>; Bove, Emil
(USANYS) <Emil.Bove@usdoj.gov>; Crowley, Shawn (USANYS) <Shawn.Crowley@usdoj.gov>
**Cc:** Joshua L. Dratel <JDratel@joshuadratel.com>; Naz Ahmad <naz.ahmad@law.cuny.edu>
**Subject:** RE: Paracha--concerns with draft nolle

Hi Liz and everyone—

As per Judge Stein's instructions, here are our proposed revisions to your draft nolle.

In keeping with Judge Stein's guidance, we are no longer requesting that language from his Rule 33
opinion be added to the document. We are simply proposing the removal of superfluous language that
could adversely impact Mr. Paracha in Pakistan. We are also correcting a single inaccurate statement. In
every instance, our suggested adjustments leave the government's chosen recitation of basic facts
intact.

Please trust that we are looking to resolve this in a way that protects our client's safety and to move
forward as expeditiously as possible (consistent with constraints beyond the control of all of us on this
list, like obtaining papers from the Pakistani authorities for Mr. Paracha). We fully recognize and accept
that this case, down to what will hopefully be its last moments, is unique in many ways, and that this
very exchange is sui generis and sets no precedent.

We look forward to hearing back from you about the below. Happy to discuss any part of it on Monday.

Best,

Ramzi


(1)
Para. 5:
On November 23, 2005, a jury convicted UZAIR PARACHA, the defendant,
on all counts in the Indictment following a trial that lasted
approximately two weeks. ~~The Government established at trial, through
evidence that included PARACHA's voluntary admissions to law
enforcement agents, that PARACHA knowingly took steps to facilitate
the unlawful entrance into the United States of an individual who
PARACHA knew was an al Qaeda operative.~~

(2)
Para. 11:
On November 14, 2018, UZAIR PARACHA, the defendant, filed a motion for
bail pending trial. On November 20, 2018, the Court denied the motion~~,
finding that, given the "serious . . . nature and circumstances of the
offense charged," there were "no conditions or combination of
conditions that [would] reasonably assure the . . . safety of the
community." Tr. Nov. 20, 2018 Conf., Dkt. No. 140, at 5~~.

(3)
Para. 16:

CHANGE

**"has consented to mandatory and immediate removal from the United States"** (because it is inaccurate as a factual and legal matter)

TO

**"has consented to voluntary and immediate repatriation from the United States to Pakistan"**

(4)
Para. 16:
**the Government believes that dismissing the Indictment under the circumstances presented is the best available option to** ~~protect the public and~~ **preserve national-security equities.**

EXHIBIT B

**From:** Ramzi Kassem
**Sent:** Thursday, December 26, 2019 8:46 AM
**To:** Hanft, Elizabeth (USANYS) <Elizabeth.Hanft@usdoj.gov>; Joshua L. Dratel
<JDratel@joshuadratel.com>; Naz Ahmad <naz.ahmad@law.cuny.edu>
**Cc:** Wirshba, Kyle (USANYS) <Kyle.Wirshba@usdoj.gov>; Dember, Andrew (USANYS)
<Andrew.Dember@usdoj.gov>
**Subject:** RE: Paracha--concerns with draft nolle

Hi Liz—

It's basically what we went over in court with Judge Stein and in my first email but I'll try to lay out the risks as we see them again below.

It bears emphasis that our suggested adjustments leave the government's chosen recitation of basic facts intact. These proposed changes result in an identical timeline conveying the case's history and its disposition but without superfluous language that carries risk for Mr. Paracha. The modified nolle would amply satisfy the prosecution's duty to provide sufficient reasons to the Court for the nolle, in keeping with Rule 48(a).

(1)
Para. 5:
On November 23, 2005, a jury convicted UZAIR PARACHA, the defendant, on all counts in the Indictment following a trial that lasted approximately two weeks. ~~The Government established at trial, through evidence that included PARACHA's voluntary admissions to law enforcement agents, that PARACHA knowingly took steps to facilitate the unlawful entrance into the United States of an individual who PARACHA knew was an al Qaeda operative.~~

The struck out language, in a nolle signed by the U.S. government and so ordered by the Court, could prompt Pakistani agencies to detain and question Mr. Paracha about his statements to U.S. law enforcement agents.

As the Court's July 3, 2018 Opinion makes clear, the reliability, consistency, coherence, and probativeness of those statements is far from firm, in light of the evidence that led the Court to vacate Mr. Paracha's conviction in the interest of justice. The Court explained that new evidence lend support to Mr. Paracha's theory that "his pretrial statements were fictions." Slip op. at 31.

The language in the proposed nolle takes what the Court described as Mr. Paracha's "inchoate," "contradictory," and "shifting pretrial statements," slip op. at 30, and characterizes those same statements without nuance as "voluntary admissions." That wording is inconsistent with the Court's actual view and it ignores the fuller understanding of the facts we possess today, as captured in the Court's opinion.

If the Court signs off on that language and so orders it, Pakistani authorities would read that as judicial endorsement. That would likely lead them to view and treat Mr. Paracha differently, detaining and questioning him about his "voluntary admissions."

(2)
Para. 11:
**On November 14, 2018, UZAIR PARACHA, the defendant, filed a motion for bail pending trial. On November 20, 2018, the Court denied the motion,** ~~finding that, given the "serious . . . nature and circumstances of the offense charged," there were "no conditions or combination of conditions that [would] reasonably assure the . . . safety of the community." Tr. Nov. 20, 2018 Conf., Dkt. No. 140, at 5.~~

The struck out language from the bail hearing could be taken by Pakistani authorities to indicate that Mr. Paracha is a threat to the safety of the community in Pakistan. That is also likely to lead to his further detention and questioning.

(3)
Para. 16:

CHANGE

**"has consented to mandatory and immediate removal from the United States"** (because it is inaccurate as a factual and legal matter)

TO

**"has consented to voluntary and immediate repatriation from the United States to Pakistan"**

Removal is a term of art and Mr. Paracha is not subject to a final order mandating his removal. The language we propose is an accurate description of what we all want to happen here. It also avoids increasing the risk that Pakistani authorities in Pakistan will be confused about Mr. Paracha's status and that they will treat him as a "deportee" who was removed from the United States, detaining and questioning him, instead of treating him as a Pakistani national who is choosing freely to return to his country.

(4)
Para. 16:
**the Government believes that dismissing the Indictment under the circumstances presented is the best available option to** ~~protect the public and~~ **preserve national-security equities.**

Finally, the struck out language above implies that Mr. Paracha is a danger to the public and that the public must be protected from him. This language from the U.S. government, countersigned by the Court, could also lead to his further detention and questioning in Pakistan and should therefore be omitted as it is unnecessary to achieve the government's purpose in this nolle.

Thanks, Liz.

Ramzi

EXHIBIT C

Case 1:03-cr-01197-SHS   Document 194   Filed 03/18/20   Page 15 of 16
Case 1:19-cr-00490-RMB   Document 52   Filed 08/29/19   Page 1 of 2
Case 1:19-cr-00490-RMB   Document 47-1   Filed 08/19/19   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                            :

UNITED STATES OF AMERICA     :

          -v.-          :

JEFFREY EPSTEIN,         :

          Defendant.   :

- - - - - - - - - - - - - - - x

**NOLLE PROSEQUI**

19 Cr. 490 (RMB)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/29/19

      1.    The filing of this nolle prosequi will dispose of this case with respect to JEFFREY EPSTEIN, the defendant.

      2.    On July 2, 2019, Indictment 19 Cr. 490 (the "Indictment") was returned, charging JEFFREY EPSTEIN, the defendant, with one count of conspiracy to commit sex trafficking of minors, in violation of 18 U.S.C. § 371, and one count of sex trafficking of minors, in violation of 18 U.S.C. § 1591.

      3.    On or about August 10, 2019, while the above-captioned case was pending, but prior to any trial or other disposition, JEFFREY EPSTEIN, the defendant, died.

      4.    Because JEFFREY EPSTEIN, the defendant, died while this case was pending, and therefore before a final judgment was issued, the Indictment must be dismissed under the rule of abatement. *See United States* v. *Wright*, 160 F.3d 905, 908 (2d Cir. 1998).

5.   Accordingly, I recommend that an order of <u>nolle prosequi</u> be filed as to defendant JEFFREY EPSTEIN.

Dated:   New York, New York
         August 19, 2019

_____
ALISON MOE / ALEX ROSSMILLER / MAURENE COMEY
Assistant United States Attorneys

Upon the foregoing recommendation, I hereby direct, with leave of the Court, that an order of <u>nolle prosequi</u> be filed as to defendant JEFFREY EPSTEIN.

Dated:   New York, New York
         August 19, 2019

_____
GEOFFREY /S./ BERMAN
United States Attorney
Southern District of New York

SO ORDERED:

Dated:   New York, New York
         August 29, 2019

The Court incorporates by reference the transcript of the hearing held on 8 /27 /19 in its entirety and underscores the significance of the Crime Victims' Rights Act, 18 U.S.C. § 3771.

_____
Hon. Richard M. Berman
United States District Judge
Southern District of New York

2