1

XJaiWpar    SEALED  SHS 3/17/2020

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

    v.                              03 Cr. 1197 (SHS)

UZAIR PARACHA,

                                    Conference
            Defendant.
------------------------------x
```

Filed with Classified Information Security Officer
CISO _____
Date _____10/18/19_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3/18/2020

New York, N.Y.
October 18, 2019
10:05 a.m.

Before:

   HON. SIDNEY H. STEIN,

      District Judge

   APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
BY: KYLE A. WIRSHBA
    SHAWN G. CROWLEY
    ANDREW J. DEMBER
    Assistant United States Attorneys
    -and-
LAWRENCE SCHNEIDER
    Department of Justice
    Counterterrorism Section

RAMZI KASSEM
    Attorney for Defendant

Also Present: Harry Rucker, Classified Information
              Security Officer

XJaiWpar         SEALED

1          (In the robing room)
2          MR. WIRSHBA:   Kyle Wirshba, on behalf of the
3   government, and I'm joined here today by Shawn Crowley, who's
4   the co-chief of the terrorism and international narcotics unit.
5   We have Mr. Geoffrey Berman, who is, of course, the U.S.
6   Attorney for the Southern District of New York; FBI Special
7   Agent George Corey; Deputy Chief of the Criminal Division
8   Andrew Dember.
9          THE COURT:   Have we lost you to this case, Mr. Dember,
10  or you're in and out?
11         MR. DEMBER:   I'm in and out.
12         THE COURT:   OK.
13         MR. DEMBER:   Mostly out.
14         THE COURT:   We can't always get what we want, sir.
15         MR. WIRSHBA:   In the back, we have Larry Schneider,
16  who is a trial attorney with the counterterrorism section of
17  the Department of Justice. ██████████████████
18  ████████████████████████████████████████████
19  ████████████████████████████████
20         THE COURT:   All right.
21         MR. KASSEM:   Ramzi Kassem for the defense, your Honor.
22         THE COURT:   Obviously you're waiving your client's
23  appearance.
24         MR. KASSEM:   Yes, your Honor.
25         THE COURT:   Where is Mr. Dratel?

XJaiWpar          SEALED

1            MR. KASSEM:    He is currently on trial in White Plains,
2    your Honor.
3            THE COURT:    All right. You'll let him know what
4    happens.
5            MR. KASSEM:    Of course.
6            THE COURT:    All right. I called you here to discuss
7    the status of discovery, and the reason I denied the request
8    for the adjournment was, the main purpose, really, was to give
9    you my views on what was happening. It's a little unusual,
10   because usually I hear from the parties and I will today, but
11   the main focus is to let the government know about my extreme
12   concern about the slow pace of the proceedings here, so let me
13   go back and just set the stage.
14           In July of 2018, I granted the motion for a new trial.
15   There was a delay. Perhaps right after that I shouldn't have
16   let it go, but there was an appeal by the government and then
17   four months later it withdrew the appeal. At that point I set
18   the trial for August of this year. That was in January of
19   2019; I set it for August. In May the government filed a
20   letter, ECF-147, saying it only recently became aware of an
21   extraordinarily large quantity of classified documents.
22           Now, I don't know why from July 2018 until May of 2019
23   it took the government to become aware of the classified
24   documents it needed to review, but I'm not really interested in
25   going back. I'm just setting the stage for what's been

1   happening to the time it's moving. Obviously at that point the
2   trial couldn't go forward in August of this year, so in June I
3   granted an adjournment until March 23, 2020. I think the main
4   message today is I am going to try this case on March 23, 2020.
5   Everyone has to be aware of that, and I expect the government
6   and the defense to be in a position to try it. I'm going to
7   try it, period.
8           At the end of August, I had a pretrial conference, and
9   I quickly became aware, it became evident that essentially
10  nothing had been done by June, even though I'd been telling the
11  government to ramp up its efforts. I set a new briefing
12  schedule. Motions now are due November 22. I don't think the
13  defense can comply with that. Actually, I know they can't, and
14  I required the government to submit status reports every ten
15  days, and they've been doing it, and the progress is getting
16  better, but it's nowhere near where it has to be for me to try
17  this case in March. You have six attorneys -- I'll shorten
18  each of the status reports -- who had only worked 13 days as of
19  September 10. September 20 report, you had one more attorney
20  only working 28 days. October 2, now you went down, five
21  attorneys working only 16 days. The most recent report,
22  October 11, you had six attorneys. Almost ▓▓▓ documents have
23  been reviewed. What the government is telling me is there are
24  ▓▓▓ documents that they're aware of now, and I don't think
25  anyone's hiding anything here. It's possible that that number

XJaiWpar           SEALED

1   can increase, and I would gather that you don't know the
2   magnitude by which it can increase, so I've got to build that
3   in. The minimum, apparently, is ▮▮▮ documents and less than
4   ▮▮▮ have been reviewed. If you continue with the current
5   rate, and obviously you're not going to, because I'm not going
6   to let you, the documents, the ▮▮▮ assuming we're not going
7   to get any more, the review of those is going to be completed
8   in January.
9           Now, the government has been telling me -- again,
10  nobody says the government is hiding anything, nor is the
11  defense -- that turning over the documents is just really the
12  first step in this process, so that back end is what we've got
13  to do better on. Again, the back end hasn't even started yet.
14  No documents have been turned over to the defense, and this is
15  October. October, November, December, January, February,
16  March, six months. It's just simply unacceptable.
17          The projections, even if you put on 15 reviewers and
18  even if the number of documents -- that is, ▮▮▮ -- doesn't
19  change, you're not going to complete the review until
20  mid-November -- actually, it's a little artificial, November
21  14, one week before motions are due. You can't do that.
22  Simply can't do that. Again, no documents have been turned
23  over except, I think, the exhibits in the original trial.
24  That's, what, 15, 18 years ago.
25          After you turn the documents over -- no, I'm sorry.

XJaiWpar		SEALED

1    Before you turn the documents over, after you do the review,
2    you've got to go to your client, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉
3    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
4    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ to get permission from the
5    relevant agency to produce the classified documents. My guess,
6    although I don't know, is that may not be an easy process. My
7    guess is that the agencies who own the documents, and I'm using
8    that in quotes, are going to be chary about releasing them, so
9    you're going to have some time that you need to work
10   internally. You'll review them. Those that you think are
11   exculpatory or impeachment, you go to the agency. You have to
12   do some negotiations. You get through the negotiations. Then
13   you decide, all right, these are the ones that we're going to
14   turn over, but you may have to come to me for a CIPA review *ex*
15   *parte*. You go through the CIPA procedures and we either come
16   up with alternatives that are permissible or we don't.
17            All that takes time. At the end of that, they're
18   turned over. And then the defense has its chance, and the
19   defense presumably, because Mr. Dratel and Mr. Kassem have
20   indicated that there most likely will be motions, and this is a
21   question that I don't expect an answer from you, how can you
22   try this case in March with that schedule? There's only one
23   way that I know of. You're going to have to massively increase
24   the lawyers who are working on this. I don't much care about
25   your problems in that regard. You're just going to have to do

XJaiWpar            SEALED

1    it, and you're going to have to go through that review, not
2    only review on an expedited basis, but your discussions with
3    the agencies, and you're going to have to come to me if there
4    are any issues and to the extent you can work with the defense,
5    although you can't very well do it if the issue is you don't
6    want them to see it, but to the extent you can, work with them.
7              That's my message. And I asked Mr. Berman to come,
8    and I realize, sir, there's a lot you have to do these days,
9    but I wanted you to hear it. None of this is in the slightest
10   implying that the assistant U.S. attorneys haven't been doing
11   their jobs. On a personal level, from my standpoint, it's just
12   got to be different because I'm trying this case on March 23,
13   2020. Message received, sir?
14             MR. BERMAN:   Understood. Message received.
15             THE COURT:    If you want to say anything, sir, you can.
16   But again, the main point is my message. For those of you who
17   litigated in front of me before, this isn't my usual style.
18   I'm at the end of my rope on this. I really don't get so
19   definitive.
20             MR. WIRSHBA:   Your Honor, message is certainly
21   received.
22             THE COURT:    The problem is, now that I gave you three
23   words to say, that you told me way back when that you were
24   going to do this, you were going to ramp up your efforts.
25             Now, word four and word five.

XJaiWpar        SEALED

1    MR. WIRSHBA: Your Honor, I think your message is
2 received, and we understand that in the past we told you that.
3 I don't want you to have the impression that things were not
4 happening during that time because things were happening during
5 that time, but I think the government would welcome the
6 opportunity to give you a status update on what we have been
7 doing, and if you will allow us to give you a sense of the
8 particular issues in this case that are causing this process to
9 be different from every other CIPA litigation process that the
10 government is aware of, we would welcome that opportunity if
11 you'll hear us.
12    THE COURT: Do you want to do that now?
13    MR. WIRSHBA: We're all here. We would love to be
14 able to do that now.
15    THE COURT: Absolutely. Let me tell you what I'm
16 going to say at the end. I don't care. Now let's go.
17    MR. BERMAN: I'll tell you what. It may make sense,
18 your Honor, to reconvene after we've had an opportunity to meet
19 with other individuals with the government. That was part of
20 our initial request for the postponement.
21    THE COURT: I understood that. And you understand me.
22    MR. BERMAN: We've gotten your message. Why don't we
23 discuss it among ourselves, and let's schedule maybe a
24 follow-up.
25    THE COURT: When do you want to do that, sir?

XJaiWpar           SEALED

1    MR. BERMAN:   I think we said the week of October 28.
2    THE COURT:   All right. Let's do it that Thursday.
3    MR. BERMAN:   I don't have my phone. It's been taken
4    from me.
5    THE COURT:   That's good.
6    MR. BERMAN:   Sure. We can schedule it for Thursday.
7    THE COURT:   28, 29, 30, 31. October 31. Let's make
8    it 10 a.m.
9    MR. KASSEM:   Judge, is there any way to make it on the
10   next day, Friday, November 1, or is that not possible for the
11   Court?
12   MR. BERMAN:   November 1, I have a commitment, so I
13   won't be able to make the hearing.
14   MR. KASSEM:   Whatever you prefer, your Honor. I can
15   do Thursday morning.
16   THE COURT:   OK. October 31. Mr. Dratel will be out
17   of his trial by then presumably?
18   MR. KASSEM:   I have no idea, your Honor.
19   THE COURT:   Let's get him here, because he's been here
20   since the appeal.
21   MR. KASSEM:   I will definitely let him know, your
22   Honor. I don't know he's still on trial or not at that point.
23   THE COURT:   OK.
24   Yes, ma'am.
25   MS. CROWLEY:   To the extent that there are -- I think

XJaiWpar          SEALED

1  your Honor knows we're going to meet with some of our
2  intelligence community partners next week.
3           THE COURT:   Yes, that was the basis for the request.
4           MS. CROWLEY:   Exactly to the extent we can provide
5  details to your Honor which I think may be relevant, helpful to
6  your Honor's understanding of what the process is that we're
7  undertaking here, we may need to do that on an *ex parte* basis.
8           THE COURT:   I understand. Not knowing what it is, I
9  can't say no. If the representation is that it's classified
10 such that it is has to be *ex parte*, you'll let me know. Under
11 CIPA, that's the way it goes. All right. You'll let me know.
12          MS. CROWLEY:   Yes, we will.
13          THE COURT:   I would urge you to the extent we can have
14 everybody here, it's just a smoother process.
15          MS. CROWLEY:   Understood, your Honor.
16          THE COURT:   Separate question. I'm not going to get
17 into the details, I just want to know the status of any
18 attempts to resolve this consensually.
19          MR. BERMAN:   Your Honor, we have been beyond flexible
20 in an attempt to resolve this. I don't want to approach Rule
21 11. I just want to tell your Honor it's top of my radar this
22 case. I've authorized my office to be extremely flexible.
23          THE COURT:   OK. Now, when I ask this, because I do
24 periodically, because it makes sense given the amount of time
25 he's been incarcerated and given the fact, I gather there's no

XJaiWpar        SEALED

1  conviction, is that right? When there's a new trial, there's
2  no conviction; he's presumed innocent, everybody knows a lot
3  more now than they did way back then by virtue of these
4  documents and what's in the newspapers so it seems to me it
5  makes sense to resolve it, when I first raised it, Mr. Dratel
6  said the same thing, but just on the other side.
7      MS. CROWLEY:   I have to tell you, your Honor, I'll
8  believe it when I see it.
9      THE COURT:   Well, I just tell you what I said: We've
10 been very flexible, but there's one issue that can't be
11 resolved.
12     MR. BERMAN:   I don't know what he's talking about.
13     THE COURT:   Talk with him then.
14     MR. BERMAN:   If he were the least bit flexible, this
15 thing would be done.
16     THE COURT:   Talk with him then. Somebody should talk
17 with him.
18     MS. CROWLEY:   Just to be a little concrete about what
19 steps have been taken, and without approaching Rule 11, we did
20 think the AUSAs on the case at the time did a reverse proffer
21 with Mr. Parach several weeks ago. We then facilitated a phone
22 call between the defendant and his father, who was at
23 Guantanamo Bay, that took place two weeks ago.
24     THE COURT:   I did not know that.
25     MS. CROWLEY:   It was about two hours long. I think

XJaiWpar          SEALED

1  that right now we don't know that that has moved the ball at
2  all, but we are certainly working toward a resolution here, and
3  we will continue working toward a resolution.
4              MR. KASSEM:   Judge, if I could be heard on that.
5              THE COURT:   Yes.
6              MR. KASSEM:   I can speak to this topic with as much
7  insight as Mr. Dratel.
8              Both sides have been flexible and open to continuing
9  that conversation. On our side, as I mentioned last time when
10 your Honor raised a similar question, we continued with the
11 defense side to work on parallel tracks.
12             THE COURT:   Parallel tracks meaning?
13             MR. KASSEM:   Parallel tracks meaning that conversation
14 is ongoing towards a possible resolution short of trial, but we
15 also have to prepare for the possibility of trial.
16             THE COURT:   Oh, you certainly do. So do they. Again,
17 I can't repeat more often, we're going to trial March 23.
18             MR. KASSEM:   We appreciate that, your Honor, and the
19 phone call, for example, that Ms. Crowley just mentioned was a
20 suggestion that came from our side, and we're grateful that the
21 government was open to that suggestion and that we were able to
22 work together to make that happen. As you can imagine with
23 someone who's been incarcerated for as long as Mr. Parach has
24 in these circumstances, that process takes time and requires
25 flexibility on both sides, but I can assure you that the

XJaiWpar            SEALED

1   conversations, without crossing any lines, that conversation
2   has been ongoing, and that there's been much back-and-forth and
3   that hopefully there will continue to be at least from our end,
4   but I can't guarantee any outcomes.
5            MR. BERMAN:   I don't believe it's been a
6   back-and-forth as much as the government would like but
7   hopefully that can be pursued after this.
8            THE COURT:   All right. I would urge that. You see
9   the view of the other side. Mr. Berman is pretty
10  straightforward here. He doesn't think there's flexibility. I
11  don't know whether there is or not. But let's have the parties
12  talking to each other at a high level.
13           MR. KASSEM:   Your Honor, just to clarify one thing,
14  there has been back-and-forth on at least two occasions.
15           THE COURT:   You're not asking me to resolve the issue
16  of whether there's back-and-forth. I'm not going to opine on
17  that. I don't have a view here.
18           MR. KASSEM:   I'm not, your Honor. I'm not.
19           THE COURT:   One says yes, the other says no.
20           MR. KASSEM:   We have not been unyielding. We have
21  been entirely enterprising. The reverse proffer was also our
22  idea. Again, we're grateful to the prosecution for having been
23  receptive to that idea. A lot of the initiative that's being
24  taken is coming from our side. I don't think it's fair to
25  represent to the Court, and perhaps Mr. Berman is not aware,

XJaiWpar          SEALED

1  because my conversations have not been with Mr. Berman, they've
2  been with his colleagues, and I can imagine that maybe he's not
3  aware of the granular details of everything, but we have taken
4  a lot of initiative towards working out a resolution, and we
5  will continue to do so.
6           THE COURT:   OK. This is posturing. It's posturing by
7  the prosecution and it's posturing by the defense. Have
8  discussions. Stop posturing.
9           Thank you. The 31st at 10 a.m. unless my deputy says
10 I've booked something else at that time.
11          MR. BERMAN:   Thank you, your Honor.
12          MR. KASSEM:   Thank you, your Honor.
13          MR. WIRSHBA:   Thank you, your Honor.
14          THE COURT:   Mark your calendars for March.
15          (Adjourned)
16
17
18
19
20
21
22
23
24
25